UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-60845-Civ-MARRA/JOHNSON

L.M.P. on behalf of E.P., D.P.,
and K.P., minors, and
L.M.P. on behalf of all others similarly
situated disabled children

      Plaintiffs,

vs.

SCHOOL BOARD OF BROWARD COUNTY,
FLORIDA, et al.,

      Defendants.
_____/

## OPINION AND ORDER

This cause is before the Court upon Defendant School Board's Motion to Dismiss Counts II, III, and Class Action Claims of the Second Amended Complaint. (DE 135). Plaintiffs have filed a response to the motion (DE 147) and Defendant has filed its reply (DE 153). The Court has considered the motion and is otherwise fully advised in the premises. The matter is now ripe for review

### I.  Background

On October 17, 2006, Plaintiffs L.M.P. filed, on behalf of E.P., D.P., K.P, and all other similarly situated disabled children, a Second Amended Complaint asserting claims against various Defendants pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, et seq., Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794, Fla. Stat. §1003.57, 42 U.S.C. § 1983, and 42 U.S.C. 1985 (DE 126). Plaintiffs also filed Class Allegations on behalf of all Broward Students with autism spectrum disorder (ASD), asserting

claims pursuant to the IDEA, Section 504, 42 U.S.C. § 1983, and 42 U.S.C. § 1985.

*Facts Alleged in Second Amended Complaint*

The facts alleged in the Amended Complaint are as follows: Plaintiff Triplets each have been diagnosed with a serious autism spectrum disorder ("ASD"). (Amended Complaint ¶ 24.) In September of 2002, prior to their second birthday, the Triplets began to receive speech therapy, occupational therapy, and physical therapy under Part C of the IDEA through their local Early Intervention Program ("EIP"). (Amended Complaint ¶ 22.) In May 2003, the Triplets began to receive thirty hours per week of Applied Behavioral Analysis therapy ("ABA").[1] (Amended Complaint ¶ 30.) The EIP program authorized the Triplets Family Support Plan ("FSP"); the final FSP for the Triplets provided that each child was to receive 30 hours of ABA. (Amended Complaint ¶ 31.)

A transition plan was prepared to move the children between the EIP program from Part C of the IDEA to part B of the IDEA (Amended Complaint ¶ 33). To facilitate the transfer, the children needed to have an Individual Education Plan (IEP) in place by their third birthday - January 4, 2004.

The transition plan had the children scheduled to be evaluated by Defendant School Board of Broward County ("School Board") on December 8, 2003. (Amended Complaint ¶ 34.) However, unbeknownst to the parents, a child study team meeting - a formal meeting at which it is determined what assessments are necessary for the children - was held for the Triplets on

---

[1] ABA is a generally recognized educational model for children diagnosed with ASD which employs principles of behavioral enforcement. (Amended Complaint ¶¶ 27, 28.) At the core of ABA, discrete trial procedures are used to reinforce relationships between specific sets of responses to external cues. (*Id.*)

2

November 18, 2004. (Amended Complaint ¶¶ 38-40.) At the December 8th meeting, the parents met with Carol Bianco, the Broward School Board Part C liaison, and explained to her that the Triplets had been receiving applied behavioral analysis ("ABA") therapy at home and asked whether Broward County could provide ABA as an intervention in Part B of the IDEA. (Amended Complaint ¶¶ 37, 38, 45.). Ms. Bianco told the parents that ABA was not an available intervention for their children because it has always been the policy of Broward County to never approve intensive one to one ABA for children as part of their IEP under any circumstances. (Amended Complaint ¶ 46.) Shedding further light on the availability of ABA treatment for children in Part B, Lakasmy Ossaba, a program specialist for pre-K programs for autistic children, had dealt with between 50-100 families that had requested similar ABA treatment and all had been denied. (Amended Complaint ¶ 47.) Ms. Ossaba testified that the ABA therapy the Triplets were receiving is not an option in Broward County, irrespective of the circumstances. (*Id.*) Further, Mary Stone, a Broward County psychologist, has stated that the ABA services the Triplets are receiving are not provided by School Board and that there is no program in a Broward County School where a child can receive a similar ABA program. (Amended Complaint ¶ 47.)

After this transition meeting with the parents, the Triplets met with the assessment team whose task it was to determine their eligibility, formulate a present level of performance and to make program recommendations for the children. (Amended Complaint ¶¶ 51-54.) A series of six tests were to be performed on each child which the parents contend would have taken several hours to conduct. (Amended Complaint ¶¶ 51- 69.) The meeting lasted an hour and fifteen minutes. (Amended Complaint ¶ 51.)

3

Concerned with thoroughness of the tests, the children's father repeatedly called and wrote letters to the school board, expressing his concerns, requesting copies of the children's evaluation reports, and attempting to reschedule the IEP meeting date. (Amended Complaint ¶¶ 72-83.) The school board responded by faxing over the evaluation reports and rescheduling the IEP meeting for January 5, 2004, one day after the Triplets were to turn three. (Amended Complaint ¶¶ 83-87.) Worried the children would turn three without an IEP in place, the father called and requested the children's last FSP be extended in the interim, including the ABA services. (Amended Complaint ¶¶ 87-88.) On December 19, 2003, Jane Koblick, a parent liaison with Broward County, called the father and denied his request for the continuation of ABA services. (*Id.*) The father placed several more calls to the School Board requesting interim ABA services for the Triplets to no avail. (Amended Complaint ¶¶ 92-97.)

The Triplets turned three on January 4, 2004 and there was no IEP established (Amended Complaint ¶¶ 97- 101). At this point the children came within the jurisdiction of the Florida Department of Education ("FDOE") and the Broward County School Board. (Amended Complaint ¶ 98). Part B of the IDEA requires that the Florida Department of Education and the Broward County School Board provide the children with a free and appropriate public education ("FAPE"). (Amended Complaint ¶ 99.)

Over the course of the next month, the Triplets' father repeatedly and vigorously expressed his concern that the examinations conducted were not proper, could not have been completed in seventy five minutes, did not accurately reflect the children's level of performance, and that the files available to the IEP team were lacking vital information, including the last FSP, rendering them incomplete and unreliable. (Amended Complaint ¶¶ 102-140.) He requested

4

that he be permitted to review the children's test records on numerous occasions and was rebuffed several times. (Amended Complaint ¶¶ 102-40.) Among other complaints, the father requested an independent educational evaluation ("IEE") and repeatedly voiced his fear that the IEP team was ill-suited to make a proper recommendation for his children. (Amended Complaint ¶¶ 112-117.)

On February 3, 2004, the Triplets IEP team temporarily assigned the children to Baudhin Oral Preschool, a private school operated by Defendant Nova University. (Amended Complaint ¶ 152.) Defendant School Board has a contract with Nova for the placement of autistic children in Baudhin Oral Preschool. Broward County has placed over 100 children with ASD at Baudhin. (Amended Complaint ¶¶ 154, 157.) Baudhin is a private school exclusively for children with ASD and only accepts students for enrollment that are subjected to the IEP process. (Amended Complaint ¶ 154.) Baudhin does not accept privately enrolled students. (*Id.*) Plaintiffs allege Nova has conspired with the School Board to never approve or consider intensive one to one ABA for children with ASD. (Amended Complaint ¶ 156.) Plaintiffs further allege that Nova has trained the School Board personnel on how to systematically violate the rights of disabled children under the IDEA. (*Id.*)

On February 5, 2004, the parents wrote to the School Board, informing it that they did not consent to the temporary placement of the Triplets at Baudhin Oral Preschool. (Amended Complaint ¶ 164.) Defendants did not take any further action after the February 3rd meeting to set up extended school services for the Triplets for the 2004 summer session. (Amended Complaint ¶ 169.) Defendants also did not take any action to have an IEP in place for the Triplets for the 2005-05 school year. (Amended Complaint ¶¶ 169- 72.) In July of 2004, the

5

Triplets changed service providers and began a new program where the children receive ten hours of ABA therapy every week. (Amended Complaint ¶ 172.)

On August 27, 2004, the Plaintiffs requested a due process hearing, alleging that the School Board violated their procedural and substantive rights under the IDEA. (Amended Complaint ¶ 177.) On April 25, 2006, following a four day hearing, an Administrative Law Judge ("ALJ") entered a final order against the Plaintiffs, declining to rule on whether the Triplets were denied a FAPE. (Amended Complaint ¶ 177.)

The ALJ did not reach the FAPE issue, finding that regardless of whether the children had been denied a FAPE, they were not eligible to receive the reimbursement that the Plaintiffs were seeking.[2] (Final order at 43). Dissatisfied with the with ALJ's ruling, Plaintiffs brought this

---

[2]   Citing to Fla. Admin. Code R. 6A-6.03311 (9)(c), the ALJ summarized the elements required for finding that the school district must reimburse a student's parents for the cost of enrollment in a private school:

> [1]  Prior to the student's enrollment in a private school, the student received specially designed instruction and related services-in consequence of his or her disability-under the authority of a public agency;
> [2]  Prior to the student's enrollment in a private school, the school district failed to make a FAPE available in a timely manner to him or her;
> [3]  After the school district's failure to timely provide a FAPE, the student's parents unilaterally enrolled the student in a private preschool, elementary school, or secondary school;
> [4]  The private placement is appropriate; and
> [5]  The parents paid (or are legally obligated for paying) the cost of that enrollment, for which dollar amount they may be reimbursed.

(Final Order at 18.) The ALJ found that Plaintiffs failed to satisfy the first and third elements.
With respect to the first element, the ALJ held that the Triplets were ineligible for reimbursement because they were not qualified students having never received specially designed instruction and related services under the authority of a public agency prior to their enrollment in a private school. (Final Order at 33-34.) The ALJ reasoned that the Triplets were not qualified students eligible for a IDEA reimbursement for two reasons. First, rejecting E.W.v. School Bd. of Miami-Dade County, 307 F.Supp. 2d 1363 (S.D.Fla. 2004) and Justin G. ex rel. Gene R. V

action.

### *Claims Contained in Second Amended Complaint*

Plaintiffs have brought suit against various Defendants, including, the School Board of Broward County. Count I alleges Defendants violated the IDEA by denying the Triplets a free and appropriate education. Count II alleges violations of Section 504 by the School Board, whereby the Triplets were "excluded from participation in, denied the benefits they were otherwise qualified to receive, or where subject to discrimination by reason of their disability." (Amended Complaint ¶ 187.) For relief, Plaintiff requests the Court find the Triplets' rights, under Section 504, have been violated since their third birthday, issue an injunction barring the Defendants from "continuing its policy and practice of refusing to approve or even consider a request for intensive one to one ABA for children with ASD," and order reimbursement to Plaintiffs for the costs of the ABA therapy and compensatory education, attorney's fees, and

---

Bd. of Educ. of Montgomery County, 148 F.Supp. 2d 576 (D.Md. 2001), the ALJ interpreted Fla. Admin. Code. R. 6A-6.03311(9)(c) as requiring prior enrollment in public school as a prerequisite for IDEA reimbursement (Final Order at 19-33). Second, the ALJ held that the early intervention services ("EIS") the Triplets received did not qualify as "specially designed instruction and related services." (Final Order at 17.) Both of these holdings have been called into doubt by *M.M. v Sch. Bd. of Miami-Dade County*, 437 F.3d 1085 (11th Cir. 2006).

With respect to [3], the ALJ found that the ABA therapy the Triplets received did not qualify as a reimbursable replacement because the Triplets were not placed in a private preschool, elementary school or secondary school. (Final Order at 33, 42.) Section R. 6A-6.03311(9)(c) of the Florida Administrative Code provides that parents may receive reimbursement for enrolling their child in a private school after the denial of a FAPE if the placement is a) made unilaterally after the denial of a FAPE; b) is located in a private preschool, elementary school, or secondary school; and c) is appropriate. (Final Order at 17-18). The ALJ found that the ABA therapy provided to the Triplets did not qualify as a placement in a private preschool, elementary school, or secondary school because the ABA therapy consisted solely of treatment and was devoid of the requisite "education" element. (Final Order at 38-39.)

Thus, the Triplets did not qualify nor were their placements in ABA therapy reimbursable. ( Final Order at 33, 42.) Finding these issues dispositive, the ALJ declined to rule on the FAPE issue. (Final Order at 43.)

other relief deemed appropriate by the Court.

Count III alleges the School Board violated the Triplets rights under Fla. Stat. § 1003.57 and requests the same relief. Counts IV and V allege violations of 42 U.S.C. §§ 1983 and 1985. Plaintiff also asserts class claims on behalf of all Broward County Public School students with ASD who requested one to one ABA to be considered as an educational intervention under the IDEA. Plaintiffs allege that, common to all class members, the school board has an absolute policy whereby a parent's request for one to one ABA therapy for their child diagnosed with ASD is never granted or even considered as part of the decision making process under the IDEA. (206-207) The alleged common issues of law are "whether the School Board's policy concerning ABA violates the procedural and substantive protections of the IDEA, the Rehabilitation Act, 42 U.S.C. § 1983, and Florida Statute § 1003.57, and constitutes a denial of a disabled child's right to a free and appropriate public education." (Amended Complaint ¶ 208.)

### *Motion to Dismiss*

The School Board moves to dismiss Counts II and III, as well as the class claims. The School Board argues Plaintiffs have failed to assert a viable claim under Section 504 because it fails to allege the Triplets were denied access to any program or benefit solely on the basis of disability. Defendant moves to dismiss Count III, arguing that Florida Statute § 1003.57 does not provide a private cause of action. Rather, the School Board asserts that § 1003.57 only incorporates the IDEA into the state statutes and describes the process to follow when an IDEA violation occurs. Finally, Defendant moves to dismiss all class claims, arguing the potential class members lack standing and have failed to exhaust their administrative remedies.

In response, Plaintiffs assert a Section 504 claim has been properly alleged in so much as the Triplets have been denied the benefits of a public education solely because they are autistic. Plaintiff also argues that Florida Statute § 1003.57 does provide an express cause of action. Finally, Plaintiffs assert that it would be futile for the class members to exhaust administrative remedies as the complaint alleges systemic violations of the IDEA - the School Board predetermines placement for autistic children by adhering to a strict policy of rejecting ABA requests from parents.

## II.     Legal Standard

Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Fed. R. Civ. P. 8(a). It is well settled that a complaint should not be dismissed unless "it appears beyond a doubt that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). Likewise, when a party argues that a complaint fails to invoke the Court's subject-matter jurisdiction on its face, the Court is required to look and see if the allegation of subject matter jurisdiction is sufficiently alleged, and the allegations in the complaint are taken as true for purposes of the motion. See *Broward Garden Tenants Ass'n v. United States Envtl. Prot. Agency*, 157 F.Supp. 2d 1329, 1336 (S.D. Fla. 2001)(*quoting Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)).

### III. Discussion

*Legal Background*

The IDEA creates a federal grant program to assist state and local agencies in providing early intervention services for disabled infants and toddlers, and in providing education to disabled children. 20 U.S.C. § 1400, *et seq.*. Under Part C of the IDEA, states must provide disabled children under three years of age with an individualized family service plan, or IFSP, setting forth specific early intervention services necessary for the toddler or infant and their family. 20 U.S.C. § 1435(a)(4). Under Part B of the IDEA, states must provide disabled children between the ages of three and twenty-one with the opportunity to receive a "free appropriate public education" ("FAPE") by offering each student special education and related services under an individualized education program, or IEP. 20 U.S.C. § 1412(a)(1)(A), (a)(4). A state is obligated to have policies and procedures in place to ensure a smooth and effective transition from early intervention programs provided under Part C of the Act to preschool programs provided under Part B of the IDEA. 34 C.F.R. § 300.132(a). To that end, a state's policies and procedures must ensure that "[b]y the third birthday of a child . . ., an IEP, or, if consistent with § 300.342(c) and section 636(d) of the Act, an IFSP, has been developed and is being implemented for the child . . .". 34 C.F.R. § 300.132(b).

To ensure that disabled children with disabilities are guaranteed procedural safeguards with respect to the provision of FAPE under Part B, the IDEA requires states to provide, among other things, "an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6). When a complaint under

10

section 1415(b)(6) is received by the state, the parents of the disabled child have an opportunity for an impartial due process hearing conducted by the state agency. 20 U.S.C. § 1415(f). Following a decision by the state agency, the parents have the right to bring a civil action with respect to the complaint in either state or federal court. 20 U.S.C. § 1415(i)(2); Florida Statute § 1003.57.

### *Count II: Section 504 Claim*

Section 504 of the Rehabilitation Act, reads "No otherwise qualified handicapped individual in the United States ... shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." 29 U.S.C. § 794(a). The parties agree that the elements of a cause of action under § 504 of the Rehabilitation Act are: (1) the plaintiff is an individual with a disability under the Rehabilitation Act; (2) the plaintiff is otherwise qualified for participation in the program; (3) the plaintiff is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely by reason of his or her disability; and (4) the relevant program or activity is receiving federal financial assistance. *L.J. v. Broward County School Bd.,* 2007 WL 1695333 at 3 (S.D.Fla.,2007)(citing 1 *Americans with Disabilities: Practice and Compliance Manual* § 1:3 (May, 2007)); *Grzan v. Charter Hosp. of Northwest Indiana,* 104 F. 3d 116, 119 (7th Cir.1997). In the context of education services, the United States Supreme Court held in *Smith v. Robinson,* 468 U.S. 992 (1984), that section 504 does not require affirmative efforts to overcome the disabilities caused by handicaps, but instead "simply prevents discrimination on the basis of handicap." *Id.* at 1017.

11

The School Board contends that Plaintiffs' Section 504 claim is merely an IDEA claim, or an educational malpractice claim, couched in Section 504 terms. The School Board asserts that Plaintiffs are proceeding under Section 504 in order to benefit from the availability of compensatory damages permitted by Section 504.[3] The School Board argues that Plaintiffs have not identified any program or benefit to which they were denied access solely on the basis of disability or that they were denied "the opportunity to participate in or benefit from the aid, benefit, or service" because of disability, as required by Section 504. 29 U.S.C. § 794(a); 34 C.F.R. § 104.4(b). In order to recover compensatory damages pursuant to Section 504, the School Board argues that Plaintiffs must allege intentional discrimination or bad faith on the part of the school board. *Wood v. President and Trustess of Spring Hill College in City of Mobile*, 978 F. 2d 1214, 1219 (11th Cir. 1992). The School Board also cites to Sixth, Eighth, and Fourth Circuit precedent holding that more harm is required for a Section 504 claim than the denial of a FAPE. *N.L. v Knox County Schools*, 315 F. 3d 688 (6th Cir. 2003); *Monahan v. Nebraska* 687 F. 2d 1164, 1170 (8th Cir. 1982); *Sellers v. Board of Massachusets*, 141 F. 3d 524 (4th Cir. 1998).

Plaintiffs respond that the complaint actually alleges that the School Board "impermissibly predetermines placement and educational decisions for autistic children" and that the School Board "denied the Triplets, and other autistic children, their right to attend a public school like any other non-disabled, or otherwise disabled child." (Pl. Resp. at 2-3.) Plaintiffs argue that this exclusion is a result of the School Board's policy to automatically segregate disabled autistic children in an insular private school, solely because they are disabled. Plaintiffs

---

[3]  Compensatory damages are available under Section 504 when there is intentional discrimination by the defendant. *Wood v. President and Trustees of Spring Hill College in the City of Mobile,* 978 F.2d 1214, 1219 (11th Cir. 1992).

contend that they have stated a 504 claim because they have alleged the Triplets were denied a right to attend a public school, they were subjected to an impermissible policy of predetermination, their parents were excluded from being meaningful participants in the IEP process, and such discrimination "intentionally excluded and denied them . . . the benefits of a public education solely by reason of the fact they are autistic." (Pl. Resp. at 3.)

Construing the allegations in the complaint in a light most favorable to the Plaintiffs, which the Court is required to do at this stage of the proceedings, the Court finds the Plaintiffs have sufficiently alleged a Section 504 claim. They have explicitly alleged in their Section 504 count that the Triplets were "excluded from participation in, denied the benefits they were otherwise qualified to receive, or where subject to discrimination by reason of their disability" (Amended Complaint ¶ 187). The Court is cognizant, however, of the School Board's arguments that many Circuits have held that a Section 504 claim requires more than the showing of a denial of a FAPE[4] and that in order to recover compensatory damages under Section 504, Plaintiffs must prove intentional discrimination.[5] These determinations must await the development of a factual record and lend themselves more aptly to a motion for summary judgment or trial.

***Count III: Fla. Stat. § 1003.57***

Florida Statute § 1003.57 states in pertinent part:

> 1) Each district school board shall provide for an appropriate program of special instruction, facilities, and services for exceptional students as prescribed by the State

---

[4] *N.L. v Knox County Schools*, 315 f. 3d 688 (6th Cir. 2003); *Monahan v. Nebraska* 687 F. 2d 1164, 1170 (8th Cir. 1982); *Sellers v. Board of Massachusets*, 141 F. 3d 524 (4th Cir, 1998).

*Wood v. President and Trustess of Spring Hill College in City of Mobile*, 978 F. 2d 1214, 1219 (11th Cir. 1992).

Board of Education as acceptable, including provisions that . . .

(e) A student may not be given special instruction or services as an exceptional student until after he or she has been properly evaluated, classified, and placed in the manner prescribed by rules of the State Board of Education. The parent of an exceptional student evaluated and placed or denied placement in a program of special education shall be notified of each such evaluation and placement or denial. Such notice shall contain a statement informing the parent that he or she is entitled to a due process hearing on the identification, evaluation, and placement, or lack thereof . . .

The decision of the administrative law judge shall be final, except that any party aggrieved by the finding and decision rendered by the administrative law judge shall have the right to bring a civil action in the circuit court. In such an action, the court shall receive the records of the administrative hearing and shall hear additional evidence at the request of either party. In the alternative, any party aggrieved by the finding and decision rendered by the administrative law judge shall have the right to request an impartial review of the administrative law judge's order by the district court of appeal as provided by s. 120.68.

Florida has incorporated the federal guidelines of the IDEA into section 1003.57, Florida Statutes, and chapter 6A-6, Florida Administrative Code. *M.H. v. Nassau County School Bd.*, 918 So. 2d 316, 318 (Fla. Dist. Ct. App. 2005). The Florida Administrative Code, *see* Fla. Admin. Code Ann. R. 6A-6.03314(6), provides a separate complaint procedure for the state of Florida. *M.M. v Sch. Bd. of Miami-Dade County*, 437 F.3d 1085, 1101 n.2 (11th Cir. 2006)(noting that it "may provide parents with additional rights.") Fla. Admin Code 6A-6.03311 provides that "due process hearings are required to be available to parents of students with disabilities and to school districts to resolve matters related to the identification, evaluation, or educational placement of the student or the provision of a free appropriate public education to the student."

Defendant correctly argues that Fla. Stat. § 1003.57 describes that process for aggrieved parties to follow for alleged denial of a FAPE in Florida; parents can initiate proceedings before

14

the Florida Division of Administrative Hearings pursuant to Fla. Stat. § 1003.57(e) for alleged violations of the IDEA. *C.P. v. Leon County School Bd. Florida*, 483 F. 3d 1151, 1154 (11th Cir. 2007). Florida Statute 1003.57 is patterned after the federal statute and allows direct appeals of the ALJ decision to the state district court of appeal or to a federal district court. *Polk County School Board v. Sammons*, 2007 WL 315094 at 1 (M.D. Fla. 2007); *M.H. v. Nassau County School Board*, 918 So. 2d 316, 317 (Fla. Dist. Ct. App. 2005).

The Florida Administrative Code confirms the federal district court's role:

> A decision made in a hearing conducted under subsection (11) of this rule shall be final; unless, **within thirty (30) days, a party aggrieved by the decision brings a civil action in federal district or state circuit court without regard to the amount in controversy, as provided in Section 1003.57(5), Florida Statutes.** The state circuit or federal district court shall: receive the records of the administrative proceedings; hear, as appropriate, additional evidence at the request of a party; and basing its decision on the preponderance of the evidence, shall grant the relief it determines appropriate. In the alternative, any party aggrieved by the administrative law judge's decision shall have the right to request an impartial review by the appropriate state district court of appeal as provided by Sections 120.68 and 1003.57(5), Florida Statutes. Nothing in this rule restricts or limits the rights, procedures, and remedies available under the U.S. Constitution, the Americans with Disabilities Act of 1990, Title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under these laws seeking relief that is also available under the procedures safeguards available under the IDEA, the procedures under impartial hearing or appeal must be exhausted to the same extent as would be required had the action been brought under the remedies available under the IDEA.

Fla. Admin. Code R. 6A-6.03311 (11)(j) (emphasis added.)

Section 1003.57 and the Florida Administrative Code clearly provides aggrieved parties in Florida a cause of action in the state system for alleged denials of a FAPE, as guaranteed to Florida citizens under Florida Statute § 1003.57.[6] If an aggrieved party wishes to dispute the

---

[6] Whether or not the federal and state statutes should be construed consistently in every respect in unclear. *See Hill by and Through Hill v. School Bd. for Pinellas County*, 954 F. Supp. 251, 254 n. 1 (M.D. Fla. 1997)("Florida Statute is patterned after the IDEA and should be

15

ALJ's findings, the party may appeal to a state court, or to a federal district court, as Plaintiffs have done here. Accordingly, Defendant's motion with respect to Count III is denied.

### *Class Claims*

Defendant moves to dismiss the class claims for lack of standing and failure to exhaust administrative remedies. There is be little dispute that claims of generalized violations of the IDEA lend themselves well to class action treatment. *See e.g. J.G. by Mrs. G. v. Board of Educ. of Rochester City School Dist.* 830 F.2d 444, 447 (2d Cir. 1987); *Jose P. v. Ambach*, 669 F. 2d 865, 867-68 (2d Cir.1982); *Battle v. Pennsylvania,* 629 F.2d 269 (3d Cir.1980), *cert. denied,* 452 U.S. 968 (1981).

As explained above, the parents of the disabled child have an opportunity for an impartial due process hearing conducted by the state agency to determine whether the child has been denied a FAPE. 20 U.S.C. § 1415(f). Following a decision by the state agency, the parents have the right to bring a civil action with respect to the complaint in either state or federal court. 20 U.S.C. § 1415(i)(2); Florida Statute § 1003.57. Compliance with the administrative remedial procedure is a prerequisite for an IDEA claim and must be complied with prior to the initiation of any action in court. "The philosophy of the [IDEA] is that plaintiffs are required to utilize the elaborate administrative scheme established by the [IDEA] before resorting to the courts to challenge the actions of the local school authorities." *N.B. v. Alachua County Sch. Bd.*, 84 F. 3d 1376, 1378 (11th Cir. 1996) (*quoting Ass'n for Retarded Citizens of Alabama v. Teague*, 830 F. 2d 158, 160 (11th Cir. 1987)(*citing Smith v. Robinson,* 468 U.S. 993, 104 (1984)).

construed consistently. However, precedent is thin.") It is also unclear, given the Eleventh Circuit's recent ambiguous acknowledgment in *M.M.*, whether Section 1003.57 provides additional rights above and beyond the IDEA

The reasons for the exhaustion rule have been articulated by the Eleventh Circuit on several occasions: 1) to permit the exercise of agency discretion and expertise on issues requiring these characteristics; 2) to allow full development of technical issues and a factual record prior to court review; 3) to prevent deliberate disregard and circumvention of agency procedures established by Congress; and 4) to avoid unnecessary judicial decisions and give the agency the first opportunity to correct the error. *See e.g. N.B.*, 84 F. 3d at 1378-79; *Ass'n for Retarded Citizens of Alabama,* 830 F. 2d at 158.

This exhaustion requirement applies not only to IDEA claims, but also to any other claims that could have been brought under the IDEA. As amended by Congress, the IDEA permits Plaintiffs to seek "remedies available under the Constitution [the ADA, Section 504], or other Federal laws protecting the rights of children with disabilities." 20. U.S.C. §1415 (*l*). However, these complementary claims are also controlled by the exhaustion requirement: "[B]efore the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter." 20 U.S.C. § 1415 (*l*). The Eleventh Circuit has interpreted this provision as requiring any claims asserting the rights of disabled children brought under the IDEA, the American with Disabilities Act (ADA), Section 504, or the Constitution to be exhausted via the state administrative proceedings. *M.T.V. v. DeKalb County Sch. Bd.*, 446 F. 3d 1153, 1157-58 (11th Cir. 2006). The Eleventh Circuit has clearly stated that the state administrative exhaustion requirement mandated by the IDEA also applies to non-IDEA claims that could have been brought under the IDEA. "This Court has held 'any student who wants relief that is available under the IDEA must use the

17

IDEA's administrative system, even if he invokes a different statute.'" Id. at 1158 *(citing Babicz v. Sch. Bd. of Broward County*, 135 F. 3d 1420, 1422 n.10 (11th Cir. 1998).

However, there are two exceptions to the exhaustion requirement recognized in the Eleventh Circuit. "The exhaustion of . . . remedies is not required where resort to administrative remedies would be 1) futile or 2) inadequate." *M.T.V.,* 446 F. 3d at 1159. The burden of proving futility rests with the party seeking to escape the exhaustion requirement. *Id.*; *See Honig v. Doe,* 484 U.S. 305, 327 (1988).

Plaintiffs argue that it would be futile to require the class member to exhaust their administrative remedies because, as clearly alleged in the Second Amended Complaint, the School Board has a policy of automatically denying all requests for ABA treatment for children with ASD. Plaintiffs contend that the class allegations do not raise unique educational issues peculiar to single students, rather they call for a legal determination whether the School Board violated the IDEA's procedural violations when the School Board consistently applies their alleged policy of denying parents request for ABA treatment. The Court agrees.

Taking the allegations in the complaint as true, it would be futile for potential class members to utilize the administrative remedial scheme in order to challenge the School Board's uniform policy of denying requests for ABA. If the parents of the children have no actual input in the IEP determination for children with ASD, and the School Board automatically determines their placement, little could be gained from requiring each family to exhaust administrative remedies. A general determination as to whether this uniform policy procedurally violates the IDEA can best be handled by a district court without the unnecessary resort to countless administrative hearings all considering the same policy and the same evidence. To do so would

expose the School Board to potentially inconsistent rulings on their standard policy, ultimately requiring an eventual resolution of the issue by a federal district court. Under the facts alleged here, exhaustion by class members would be needless and futile.

## IV. CONCLUSION.

Based upon the foregoing, it is **ORDERED and ADJUDGED** that Defendant School Board's Motion to Dismiss Counts II, III, and Class Action Claims of the Second Amended Complaint **(DE 135)** is **DENIED**.

**DONE and ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 25th day of September, 2007.

KENNETH A. MARRA
United States District Judge

Copies to: All Counsel of Record