UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-60845-Civ-MARRA/JOHNSON

L.M.P. on behalf of E.P., D.P.,
and K.P., minors, and
L.M.P. on behalf of all others similarly
situated disabled children

       Plaintiffs,

vs.

SCHOOL BOARD OF BROWARD COUNTY,
FLORIDA, et al.,

       Defendants.

_____/

## OPINION AND ORDER

_____This cause is before the Court upon individual Defendants' Frank Till, Leah Kelly, Janice

Koblick, Nancy Liberman, Laksamy Ossaba, Catherine Caruso, Angelina Johnson, Patricia Pritz,

Karleen Brunt, Mary Stone, Ilene Anchell, and Grace McDonald (collectively referred to as the

"Individual School Board Defendants") Motion to Dismiss Second Amended Complaint (DE

139); and Defendant Mary Sue Gizzi's Motion to Dismiss Count IV, V, and Class Action Claims

of the Second Amended Complaint. (DE 136.) Plaintiffs have filed a response to both motions.

(DE 149 & DE 141.) The Court has considered the motions and is otherwise fully advised in the

premises. The matter is now ripe for review

## I.     Background

On October 17, 2006, Plaintiffs L.M.P. filed, on behalf of E.P., D.P., K.P, and all other

similarly situated disabled children, a Second Amended Complaint asserting claims against

various Defendants pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20

U.S.C. § 1400, et seq., Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794,

Fla. Stat. §1003.57, 42 U.S.C. § 1983, and 42 [1]U.S.C. 1985 (DE 126). Plaintiffs also filed Class

Allegations on behalf of all Broward Students with autism spectrum disorder (ASD), asserting

claims pursuant to the IDEA, Section 504, 42 U.S.C. § 1983, and 42 U.S.C. § 1985.

### *Facts Alleged in Second Amended Complaint*

The facts alleged in the Amended Complaint are as follows: Plaintiff Triplets each have

been diagnosed with a serious autism spectrum disorder ("ASD"). (Amended Complaint ¶ 24.)

In September of 2002, prior to their second birthday, the Triplets began to receive speech

therapy, occupational therapy, and physical therapy under Part C of the IDEA through their local

Early Intervention Program ("EIP"). (Amended Complaint ¶ 22.) In May 2003, the Triplets

began to receive thirty hours per week of Applied Behavioral Analysis therapy ("ABA")[1].

(Amended Complaint ¶ 30.) The EIP program authorized the Triplets Family Support Plan

("FSP"); the final FSP for the Triplets provided that each child was to receive 30 hours of ABA.

(Amended Complaint ¶ 31.)

A transition plan was prepared to move the children between the EIP program from Part

C of the IDEA to part B of the IDEA (Amended Complaint ¶ 33). To facilitate the transfer, the

children needed to have an Individual Education Plan (IEP) in place by their third birthday -

January 4, 2004.

---

[1] ABA is a generally recognized educational model for children diagnosed with ASD which employs principles of behavioral enforcement. (Amended Complaint ¶¶ 27, 28.) At the core of ABA, discrete trial procedures are used to reinforce relationships between specific sets of responses to external cues. (*Id.*)

The transition plan had the children scheduled to be evaluated by the School Board on December 8, 2003. (Amended Complaint ¶ 34.) However, unbeknownst to the parents, a child study team meeting - a formal meeting at which it is determined what assessments are necessary for the children - was held for the Triplets on November 18, 2004. (Amended Complaint ¶¶ 38-40.) At the December 8th meeting, the parents met with Carol Bianco, the Broward School Board Part C liaison, and explained to her that the Triplets had been receiving applied behavioral analysis ("ABA") therapy at home and asked whether Broward County could provide ABA as an intervention in Part B of the IDEA. (Amended Complaint ¶¶ 37, 38, 45). Ms. Bianco told the parents that ABA was not an available intervention for their children because it has always been the policy of Broward County to never approve intensive one to one ABA for children as part of their IEP under any circumstances. (Amended Complaint ¶ 46.) Shedding further light on the availability of ABA treatment for children in Part B, Lakasmy Ossaba, a program specialist for pre-K programs for autistic children, had dealt with between 50-100 families that had requested similar ABA treatment and all had been denied. (Amended Complaint ¶ 47.) Ms. Ossaba testified that the ABA therapy the Triplets were receiving is not an option in Broward County, irrespective of the circumstances. (*Id.*) Further, Mary Stone, a Broward County psychologist, has stated that the ABA services the Triplets are receiving are not provided by School Board and that there is no program in a Broward County School where a child can receive a similar ABA program. (Amended Complaint ¶ 47.)

After this transition meeting with the parents, the Triplets met with the assessment team whose task it was to determine their eligibility, formulate a present level of performance and to make program recommendations for the children. (Amended Complaint ¶ ¶ 51-54.) A series of

3

six tests were to be performed on each child which the parents contend would have taken several hours to conduct. (Amended Complaint ¶¶ 51- 69.) The meeting lasted an hour and fifteen minutes. (Amended Complaint ¶ 51.)

Concerned with thoroughness of the tests, the children's father repeatedly called and wrote letters to the school board, expressing his concerns, requesting copies of the children's evaluation reports, and attempting to reschedule the IEP meeting date. (Amended Complaint ¶¶ 72-83.) The school board responded by faxing over the evaluation reports and rescheduling the IEP meeting for January 5, 2004, one day after the Triplets were to turn three. (Amended Complaint ¶¶ 83-87.) Worried the children would turn three without an IEP in place, the father called and requested the children's last FSP be extended in the interim, including the ABA services. (Amended Complaint ¶¶ 87-88.) On December 19, 2003, Jane Koblick, a parent liaison with Broward County, called the father and denied his request for the continuation of ABA services. (*Id.*) The father placed several more calls to the School Board requesting interim ABA services for the Triplets to no avail. (Amended Complaint ¶¶ 92-97.)

The Triplets turned three on January 4, 2004 and there was no IEP established (Amended Complaint ¶¶ 97- 101). At this point the children came within the jurisdiction of the Florida Department of Education ("FDOE") and the Broward County School Board. (Amended Complaint ¶ 98). Part B of the IDEA requires that the Florida Department of Education and the Broward County School Board provide the children with a free and appropriate public education ("FAPE") (Amended Complaint ¶ 99).

Over the course of the next month, the Triplets' father repeatedly and vigorously expressed his concern that the examinations conducted were not proper, could not have been

4

completed in seventy five minutes, did not accurately reflect the children's level of performance, and that the files available to the IEP team were lacking vital information, including the last FSP, rendering them incomplete and unreliable.  (Amended Complaint ¶¶ 102-140.)  He requested that he be permitted to review the children's test records on numerous occasions and was rebuffed several times. (Amended Complaint ¶¶ 102-40.)  Among other complaints, the father requested an independent educational evaluation ("IEE") and repeatedly voiced his fear that the IEP team was ill-suited to make a proper recommendation for his children.  (Amended Complaint ¶¶ 112-117.)

On February 3, 2004, the Triplets IEP team temporarily assigned the children to Baudhin Oral Preschool, a private school operated by Defendant Nova University.  (Amended Complaint ¶ 152.)  Defendant School Board has a contract with Nova for the placement of autistic children in Baudhin Oral Preschool.  Broward County has placed over 100 children with ASD at Baudhin. (Amended Complaint ¶¶ 154, 157.)  Baudhin is a private school exclusively for children with ASD and only accepts students for enrollment that are subjected to the IEP process.  (Amended Complaint ¶ 154.)  Baudhin does not accept privately enrolled students.  (*Id.*)  Plaintiffs allege Nova has conspired with the School Board to never approve or consider intensive one to one ABA for children with ASD.  (Amended Complaint ¶ 156.)  Plaintiffs further allege that Nova has trained the School Board personnel on how to systematically violate the rights of disabled children under the IDEA.  (*Id.*)

On February 5, 2004, the parents wrote to the School Board, informing it that they did not consent to the temporary placement of the Triplets at Baudhin Oral Preschool.  (Amended Complaint ¶ 164.)  Defendants did not take any further action after the February 3rd meeting to

5

set up extended school services for the Triplets for the 2004 summer session. (Amended

Complaint ¶ 169.) Defendants also did not take any action to have an IEP in place for the

Triplets for the 2005-05 school year. (Amended Complaint ¶¶ 169- 72 .) In July of 2004, the

Triplets changed service providers and began a new program where the children receive ten

hours of ABA therapy every week. (Amended Complaint ¶ 172.)

On August 27, 2004, the Plaintiffs requested a due process hearing, alleging that the

School Board violated their procedural and substantive rights under the IDEA. (Amended

Complaint ¶ 177). On April 25, 2006, following a four day hearing, an Administrative Law

Judge ("ALJ") entered a final order against the Plaintiffs, declining to rule on whether the

Triplets were denied a FAPE (Amended Complaint ¶ 177).

The ALJ did not reach the FAPE issue, finding that regardless of whether the children

had been denied a FAPE, they were not eligible to receive the reimbursement that the Plaintiffs

were seeking[2] (Final order at 43). Dissatisfied with the with ALJ's ruling, Plaintiffs brought this

---

[2] Citing to Fla. Admin. Code R. 6A-6.03311 (9)(c), the ALJ summarized the elements required for finding that the school district must reimburse a student's parents for the cost of enrollment in a private school:

[1]   Prior to the student's enrollment in a private school, the student received specially designed instruction and related services-in consequence of his or her disability-under the authority of a public agency;

[2]   Prior to the student's enrollment in a private school, the school district failed to make a FAPE available in a timely manner to him or her;

[3]   After the school district's failure to timely provide a FAPE, the student's parents unilaterally enrolled the student in a private preschool, elementary school, or secondary school;

[4]   The private placement is appropriate; and

[5]   The parents paid (or are legally obligated for paying) the cost of that enrollment, for which dollar amount they may be reimbursed.

(Final Order at 18.) The ALJ found that Plaintiffs failed to satisfy [1] because the Triplets had

action.

### *Claims Contained in Second Amended Complaint*

Plaintiffs have brought suit against various Defendants, including the School Board of

Broward County, Nova Southeastern University ("Nova"), and numerous individual Defendants

who, with the exception of Mary Sue Gizzie, were all employees of the School Board.  Count I

alleges the School Board  violated the IDEA by denying the Triplets a free and appropriate

education.  Count II alleges violations of Section 504 by the School Board, whereby the Triplets

were "excluded from participation in, denied the benefits they were otherwise qualified to

receive, or where subject to discrimination by reason of their disability."  (Amended Complaint

¶ 187.)  For relief, Plaintiff requests the Court find the Triplets rights, under Section 504, have

been violated since their third birthday, issue an injunction barring the Defendants from

"continuing its policy and practice of refusing to approve or even consider a request for intensive

one to one ABA for children with ASD," and order reimbursement to Plaintiffs for the costs of

the ABA therapy and compensatory education, attorney's fees, and other relief deemed

appropriate by the Court.  Count III alleges the School Board violated the Triplets rights under

Fla. Stat. § 1003.57 and requests the same relief.

Count IV asserts a claim for 42 U.S.C. § 1983 and alleges the Individual School Board

Defendants and Mary Sue Gizzie, acting in her capacity as an employee or agent of the School

Board, conspired together to deprive the Triplets of their right to a FAPE under the IDEA.

---

not received "specially designed instruction and related services" and [3] because the Triplets
were not placed in a private preschool, elementary school or secondary school. (Final Order at
33, 42.) Thus, the Triplets did not qualify nor were their placements in ABA therapy
reimbursable. ( Final Order at 33, 42.)  Finding these issues dispositive, the ALJ declined to rule
on the FAPE issue. (Final Order at 43.)

Plaintiffs assert that these Defendants perpetuated and applied an unlawful policy whereby the "Triplets' parents request for continuation of ABA was not considered and by otherwise denying the Triplets substantive and procedural rights under the IDEA." (Amended Complaint ¶ 195.) Plaintiffs further allege that these actions constituted a conspiracy against the Triplets' rights to the free exercise of enjoyment of the right to a FAPE guaranteed to them under the laws of the United States, and that Defendants' actions otherwise constitute a conspiracy prohibited by 18 U.S.C. § 241. (*Id.*) In the alternative, Plaintiffs plead the same allegations against the Individual School Board Defendants, yet allege Ms. Gizzie acted in her capacity as an independent contractor and include Defendant Nova in the conspiracy. (Amended Complaint ¶ 196.) Finally, Plaintiffs allege Defendants Till and Kelly, the Superintendent of Broward Schools and the Director of Broward County School Department of Exceptional Student Education, should have known of the alleged systemic violations of the Triplets rights and had the duty and power "to prevent such deprivation, and failed to carry out their duty to prevent injury to the Triplets." (Amended Complaint ¶ 197.) Further, Defendants Till and Kelly allegedly failed to act despite knowledge of the conspiracy, with the view of protecting and aiding it, and their actions also constitute a conspiracy prohibited by 18 U.S.C. 241. (*Id.*)

Count V is pled pursuant to 42 U.S.C. § 1985. Plaintiffs allege that "Defendant's actions were motivated by an animus to the Triplets because they have ASD and children with ASD are most costly to properly educate than non-disabled or otherwise disabled student." (Amended Complaint ¶ 199.) The remaining allegations mirror those found in Count IV.

8

***Individual Defendants' Motion to Dismiss***

Individual School Board Defendants move to dismiss Counts IV and V. Defendants argue that Individual School Board employees cannot be held liable under Section 1983 as the IDEA limits liability to funding recipients. For support, Defendants direct the Court to *Williams v. Bd. of Regents of the Univ Sys. Ga.*, 477 F. 3d 1282, 1299-1302 (11th Cir. 2007), where the Eleventh Circuit held employees of the University of Georgia could not be held liable under Section 1983 for Title IX violations as Title IX relief is limited to funding recipients. (*Id.*) Defendants next argue that Plaintiffs claims are barred by the intra-corporate conspiracy doctrine. Finally, Defendants assert that the individual School Board Defendants are entitled to qualified immunity.

In response, Plaintiffs argue that this Court has already ruled that the Triplets have stated a claim under 42 U.S.C. § 1983 and therefore the suit against the Individual School Board Defendants may proceed. With respect to the intra-corporate conspiracy doctrine, Plaintiffs assert that the criminal exception stated in *McAndrews v Lockheed Martin Corp.*, 206 F. 3d 1031 (11th Cir. 2000), renders the doctrine inapplicable. Lastly, Plaintiffs assert the Individual Defendants are not entitled to qualified immunity.

## II.     Legal Standard

Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Fed. R. Civ. P. 8(a). It is well settled that a complaint should not be dismissed unless "it appears beyond a doubt that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46

(1957).  When considering a motion to dismiss, the Court must accept all of the plaintiff's

allegations as true.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  Likewise, when a party

argues that a complaint fails to invoke the Court's subject-matter jurisdiction on its face, the

Court is required to look and see if the allegation of subject matter jurisdiction is sufficiently

alleged, and the allegations in the complaint are taken as true for purposes of the motion.  See

*Broward Garden Tenants Ass'n v. United States Envtl. Prot. Agency*, 157 F.Supp. 2d 1329, 1336

(S.D. Fla. 2001)(*quoting Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)).

## III.   Discussion

### *Legal Background*

The IDEA creates a federal grant program to assist state and local agencies in providing

early intervention services for disabled infants and toddlers, and in providing education to

disabled children.  20 U.S.C. § 1400, *et seq.*.  Under Part C of the IDEA, states must provide

disabled children under three years of age with an individualized family service plan, or IFSP,

setting forth specific early intervention services necessary for the toddler or infant and their

family.  20 U.S.C. § 1435(a)(4).  Under Part B of the IDEA, states must provide disabled

children between the ages of three and twenty-one with the opportunity to receive a "free

appropriate public education" ("FAPE") by offering each student special education and related

services under an individualized education program, or IEP.  20 U.S.C. § 1412(a)(1)(A), (a)(4).

A state is obligated to have policies and procedures in place to ensure a smooth and effective

transition from early intervention programs provided under Part C of the Act to preschool

programs provided under Part B of the IDEA.  34 C.F.R. § 300.132(a).  To that end, a state's

policies and procedures must ensure that "[b]y the third birthday of a child . . ., an IEP, or, if

consistent with § 300.342(c) and section 636(d) of the Act, an IFSP, has been developed and is being implemented for the child . . .".  34 C.F.R. § 300.132(b).

To ensure that disabled children with disabilities are guaranteed procedural safeguards with respect to the provision of FAPE under Part B, the IDEA requires states to provide, among other things, "an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child."  20 U.S.C. § 1415(b)(6).  When a complaint under section 1415(b)(6) is received by the state, the parents of the disabled child have an opportunity for an impartial due process hearing conducted by the state agency.  20 U.S.C. § 1415(f).  Following a decision by the state agency, the parents have the right to bring a civil action with respect to the complaint in either state or federal court.  20 U.S.C. § 1415(i)(2).

### Count IV 42 U.S.C. § 1983

In a previous ruling in this case, the Court held that Plaintiffs could assert Section 1983 claims based on IDEA violations.  (DE 122.)  The Court, however, did not address whether Plaintiffs could assert a § 1983 claim against individuals for alleged IDEA violations.  This issue is now squarely before the Court.

Defendants argue individuals cannot be held liable for violations of the IDEA and therefore cannot be held liable under § 1983 for an IDEA violation.  For support, Defendants rely on *Williams v. Board of Regents of the University System of Georgia*, where the Eleventh Circuit held individual employees of the University of Georgia could not be held liable under § 1983 for Title IX violations because Title IX relief is limited to funding recipients.  477 F. 3d at 1299 - 1302.  In acknowledging the Eleventh Circuit " has never considered whether a plaintiff can use

11

§ 1983 to assert a Title IX claim against an individual school official" the Court concluded "that to allow plaintiffs to use § 1983 in this manner would permit an end run around Title IX's explicit language limiting liability to funding recipients." *Id.* at 1300.

Although the language of the IDEA is less explicit than Title IX, all of the statute's provisions overwhelmingly suggest only the school district or public agency can be held liable. The Eighth Circuit recognized this in *Bradley v. Arkansas Department of Education,* 301 F.3d 952 (8th Cir. 2002), "the IDEA is devoid of textual support for ... an award" against individual defendants; "such expenses would be recoverable [only] from the school district (or public agency)." *Id.* at 957 n. 6. The First Circuit has concurred, finding that the "the plain text of the statute authorizes reimbursement of educational expenses only against the agency, not against any of its officials" *Diaz-Fonseca v. Puerto Rico,* 451 F.3d 13, 35 (1st Cir. 2006); *See* 20 U.S.C. § 1412(a)(10)(C)(ii) ("If the parents of a child with a disability, who previously received special education and related services under the authority of a public agency, enroll the child in a private elementary school or secondary school without the consent of or referral by the public agency, a court or a hearing officer may require *the agency* to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made a [FAPE] available to the child in a timely manner prior to that enrollment." (emphasis added)). The *Diaz-Fonseca* Court reasoned "that only the public agency is liable for reimbursement follows naturally from the fact that Congress assigned to the agency the ultimate responsibility for ensuring FAPE." *Id.*; *See* § 1400(c)(6) ("States, local educational agencies, and educational service agencies are primarily responsible for providing an education for all children with disabilities ...."); § 1401(9)(A) (requiring that a FAPE be "provided at public expense, under public supervision and

12

direction, and without charge"). Accordingly, the First Circuit concluded, and this Court agrees, that the IDEA does not provide any claim for monetary relief against individual defendants. *Id.*

Further, Plaintiffs fail to direct the Court to any specific provision in the IDEA allowing for recovery against individual school officials and employees. Rather, Plaintiffs rely on the broad language contained in Section 1415(*l*) of the IDEA. Section 1415(*l*) was added in 1986 by Congress in response to the United States Supreme Court's decision in *Smith v. Robinson,* 468 U.S. 992 (1984). In *Smith,* the Court held that neither § 1983 or the Rehabilitation Act were available as a means to seek relief for violations of the EHA.[3] Section 1415(*l*) states:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C.A. § 1415 (*l*). Although this clarified Congress' intent to allow plaintiffs to pursue various claims that may arise based upon violations of the IDEA, it cannot be read to contradict the clear language in the statute which identifies only school boards and agencies as proper parties for claims brought under the IDEA. Also, Plaintiffs have not alerted the Court to any support from any of the Circuit Courts indicating individuals can be held liable for violations of the IDEA.

As the IDEA limits liability to the school district or public agency, and does not provide for any individual liability, the Court agrees that the reasoning of the Eleventh Circuit in

---

[3] Congress changed the EHA's name to the IDEA in 1990 . Pub . L. No . 101-476, 104 Stat. 1141 (1990).

*Williams* should apply here and finds no justification for holding individuals liable under a §

1983 claim premised on an IDEA violation. The Court notes that the Eighth Circuit has staked

out a similar position as this Court by allowing § 1983 claims based on IDEA violations but

prohibiting § 1983 suits seeking damages for IDEA violations against individuals. *See e.g.*

*Digre v Roseville Schools Independent District. No. 623*, 841 F. 2d 245, 251 (8th Cir.

1988)(holding that Congress' "amendment supercedes the holding in *Smith* that a section 1983

action is not available to enforce the [EHA]'s substantive rights. . .[t]hus Mrs. Diegre was

entitled to bring a section 1983 action based on alleged violations of the EHA."); *Bradley,* 301 F.

3d at 956-57 (holding that state officials are not liable for damages for alleged IDEA violations

premised on a section 1983 claim). In *Bradley*, the Eighth Circuit held that state officials were

entitled to qualified immunity for § 1983 claims based on the IDEA because Plaintiffs sought

compensatory and punitive damages against the school officials, damages that are not available

under the IDEA. *Id.* "Because the Bradleys cannot recover damages against the state officials in

their individual capacities under the IDEA, they also cannot recover those damages in a § 1983

suit for violations of the IDEA." *Id.* at 957. The *Bradley* Court relied on the Sixth Circuit, which

has similarly held that a §1983 claim may be based on an IDEA violation, but does not provide

for damages: "Section 1983 merely secures the federally protected rights a plaintiff already holds.

It does not expand those rights. . . Section 1983 did not provide a right to damages where none

existed before." *Bradley*, 301 F. 3d at 957 (quoting *Crocker v. Tenn. Secondary Sch. Athletic

Ass'n,* 980 F. 2d 382, 387 (6th Cir.1992)).

14

The Court finds the reasoning of the Eight Circuit persuasive only with respect to the issue squarely before the Court - *individual* liability for § 1983 claims based on IDEA violations. The IDEA does not provide plaintiffs with a right to seek relief against individual school board officials and §1983 cannot create a right where none existed. *Chapman v. Houston Welfare Rights, Org.*, 441 U.S. 600, 617-18 (1979) ("[Section 1983 by itself does not protect anyone against anything. . .[it] does not provide any substantive rights at all.") However, damages are available under § 1983 for violations of the IDEA against proper parties who are subject to damage claims under the IDEA (school board, public agencies). As more fully explained in this Court's previous order (DE 122), Congress intended to restore the ability of parents to pursue claims under § 1983 for IDEA violations when it amended the IDEA in 1986, explicitly overruling Smith v Robinson, 468 U.S. 992.[4] By explicitly permitting § 1983 suits based on IDEA violations, it logically follows that the entire panoply of remedies afforded by § 1983 are available to plaintiffs against *proper* IDEA defendants. To hold otherwise would render Congress' amendment meaningless.

However, Congress' Amendment cannot be read to expand liability to *additional* individual school board defendants not authorized by the IDEA when the clear provisions in the IDEA - which Congress could have changed - indicate only school boards and public agencies are proper parties. *See Williams*, 447 F. 3d at 1299 -1302. Accordingly, the Court holds, consistent with the Eleventh Circuit's rationale in *Williams*, that individuals cannot be held liable for §1983 claims based on IDEA violations because they are not proper parties under the IDEA.

---

[4] The Court stands by its decision despite the Third Circuit's recent defection in *A.W. v. Jersey City Public Schools*, 486 F. 3d 791 (3d Cir. 2007).

Section 1983 "merely secures the federally protected rights a plaintiff already holds. It does not

expand those rights." *Bradley*, 301 F. 3d at 957. Where Congress has provided a statutory

remedial scheme that clearly limits liability to identifiable parties, as they have done with Title

IX and the IDEA, § 1983 may not be used to make "an end run around" the limits intended by

Congress. *See Williams*, 447 F. 3d at 1299-1302. Having reviewed the relevant case law[5] and

the legislative history of the Handicapped Children's Protection Act of 1986, 20 U.S.C. §1415(*l*),

the Court believes this result reflects the intent of Congress in amending the IDEA and the

correct interpretation of the statute.[6]

### Count V 42 U.S.C. § 1985

Defendants have moved to dismiss Count V, brought under 42 U.S.C. § 1985, on the same

ground asserted for dismissing Count IV - individual school board employees cannot be held

liable for a violation of the IDEA. Defendants assume the same rationale applicable to § 1983

---

[5] Plaintiff cites to a federal district court in Indiana which reached the opposite conclusion. *Weyrick v. New Albany-Floyd County Consolidated School Corporation*, 2004 U.S. Dist. Lexis 26435 (S.D. Ind. 2004). The court in *Weyrick* held "even if it seems unfair or unwise to subject individual teachers, counselors, psychologists, and principals to litigation and potential liability, that is the plainly foreseeable result of the 1986 statutory amendments at least as extended to § 1983 in *Marie O.*" *Id.* at 19-20. This Court rejects the conclusion reached by the *Weyrick* Court.

[6] Defendant Gizzis's Motion (DE 136) contains three conclusory sentences, alleging Count IV and Count V should be dismissed for failure to state a claim and alleging that the class claim must be dismissed for failure to exhaust administrative remedies. Defendant Gizzis did not provide a supporting memorandum of law in support of the motion.

Standing along, Defendant Gizzie's motion would be insufficient. However, given the Court's ruling that individuals cannot be held liable under § 1983 for claims premised on IDEA violations, the Court grants Defendant Gizzi's motion. To dismiss the Individual School Board Defendants from the complaint and force Defendant Gizzi to continue litigating - when the Court's holding applies equally to her - would be a waste of judicial, as well as the parties', resources.

claims against individual defendants will apply equally to § 1985 claims. Defendants, however, fail to provide any support for this assertion. In the absence of any authority to support Defendants' contention, their motion on this ground is rejected.

Defendants also assert qualified immunity as a defense to the § 1985 claim. The Court has independently discovered, however, that it is well settled law in the Eleventh Circuit that public officials cannot raise a qualified immunity defense to a section 1985(3) claim. *Burrell v. Board of Trustees of Ga. Military College*, 970 F. 2d 785, 794 (11th 1992); *Gonzalez v. Lee County Housing Authority*, 161 F. 3d 1290, 1300 (11th 1998). Accordingly, Defendants qualified immunity defense fails.

Although the Individual School Board Defendants have not specifically argued that Plaintiffs have failed to state a claim under Section 1985, the Court will nonetheless address that question. Here, as Plaintiff have repeatedly noted, the parties have been litigating this case for several years without any resolution on the merits. To prolong already protracted litigation and require the parties to spend needless resources on a claim that may ultimately lack merit would be a waste of this Court's and the parties' valuable time and resources. Further, Defendant Nova has raised this issue in its separately filed Motion to Dismiss (DE 138), and Plaintiffs have responded (DE 146). As Nova argues, Plaintiffs §1985 claim is deficient. Allowing Plaintiffs to proceed against some Defendants on a § 1985 claim, while precluding Plaintiffs from proceeding against another Defendant on the same claim because it does not state a valid cause of action, undermines judicial economy.

The elements of a cause of action under Section 1985(3)[7] are (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. *Burrell v. Board of Trustees of Ga. Military College* 970 F. 2d at 793 -794 (quoting *United Brotherhood of Carpenters & Joiners of America, Local 610 v. Scott,* 463 U.S. 825, 828-29, (1983)). Speaking to the second element, the Supreme Court has held that it requires a showing of "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions." *Id.*

The need for this stringent requirement has been repeatedly articulated by courts: "[c]oncerns that § 1985 might be interpreted into a general federal tort law led to the requirement that the conspiracy be motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Park v. City of Atlanta*, 120 F. 3d 1157, 1161 (11th Cir. 1997) (internal citation and quotation omitted). Indeed, the Eleventh Circuit has stressed how this narrow element "erects a significant hurdle for section 1985(3) plaintiffs" and "[s]ection 1985(3) actions often stand or fall on the plaintiff's ability to establish the specific type of discriminatory animus behind the conspirators' actions." *Burrell*, 970 F. 2d at 794 (citing *Scott*, 463 U.S. at 835-39). In *Scott*, the decision on which the *Burrell* Court primarily relied, the Supreme Court stated that § 1985(3) claims do not "reach conspiracies motivated by *economic* or *commercial* animus."

---

[7] 42 U.S.C. § 1985 has three subparts: (1) Preventing officer from performing duties; (2) Obstructing justice; intimidating party, witness, or juror; and (3) Depriving persons of rights or privileges. 42 U.S.C.A. § 1985 (West 2003). The Court presumes Plaintiffs' claims are made pursuant to 42 U.S.C. § 1985(3).

*Scott,* 463 U.S. at 839. (emphasis added.)

Here, in response to the assertion that Plaintiffs have not sufficiently pled this critical second element, Plaintiffs rely upon paragraph 199 of their amended complaint. Having combed through the forty-one page complaint, the Court agrees that this paragraph, contained within Count V, provides the most support for the "discriminatory animus" element of Plaintiffs § 1985 claim. The paragraph reads: "Defendants' actions were motivated by an animus to the Triplets because they have ASD and children with ASD are most costly to properly educate than non-disabled or otherwise disabled students." (Amended Complaint ¶ 199.)

Plaintiffs are alleging that Defendants' actions - the alleged denial of a FAPE for the Triplets - was motivated by *economic* animus. While paragraph 199 states that the actions were motivated by animus because the Triplets have ASD, it is not ASD alone which is the basis for the claim. Rather, it is the cost of providing the ABA therapy that is the motivating factor. Plaintiffs are not claiming that the Triplets were denied a FAPE because they have ASD. They allege that they were denied a FAPE because of the cost of providing it. Read in a light most favorable to Plaintiffs, the complaint alleges Defendants automatically placed the children in the Baudhin School without considering the parents' request for ABA treatment and failed to have an IEP in place for the children by their third birthday. The factual allegations do not amount to Defendants invidiously discriminating against the children based on their disability - the children were not left without an education. Rather, they were provided with an education the parents considered less desirable. As it stands, Plaintiffs have alleged Defendants' actions were motivated by economic animus and the complaint cannot clear the significant hurdle imposed by

19

the second element of 1985(3). *Scott,* 463 U.S. at 839; *Burrell*, 970 F. 2d at 794.[8]

Further, if the Court were to accept Plaintiffs' reasoning every allegation of the denial of

a FAPE involving more than one person would also give rise to a 1985(3) claim because the

IDEA, by definition, applies to individuals with disabilities.  Such a construction of the statute

would impermissibly expand its reach beyond that which Congress intended.[9]

## IV.    Conclusion

Based upon the foregoing, it is **ORDERED and ADJUDGED** as follows:

1.    Defendants', Till, Kelly, Koblick, Liberman, Ossaba, Caruso, Johnson, Pritz,

Brunt, Stone, Anchell, and McDonald, Motion to Dismiss Second Amended

Complaint **(DE 139) is GRANTED**;

2.    Defendant Mary Sue Gizzi's Motion to Dismiss Count IV, V, and Class Action

Claims of the Second Amended Complaint.  **(DE 136) is GRANTED IN PART.**

    A.    Count IV is **DISMISSED WITH PREJUDICE** as to the individual State

       Defendants and Defendant Gizzi

    B.    Count V is **DISMISSED WITHOUT PREJUDICE** for failure to state a

       claim.

---

[8] As discussed *supra* in footnote 6, Defendant Gizzi's motion to dismiss is also granted with respect to count V.

[9] Under Counts IV and V, Plaintiffs also allege these actions constitute a conspiracy prohibited by 18 U.S.C. § 241, the criminal counterpart to § 1985.  This does not alter the nature of Plaintiffs' underlying claim - the alleged denial of a FAPE.  The Plaintiffs presumably included this criminal statute in an attempt to avoid the application of the intra-corporate conspiracy doctrine.  However, as the Court finds that Count V must be dismissed for failure to state a claim, the Court does not reach the intra-corporate conspiracy issue.

C.    Defendant Gizzi's Motion to Dismiss, with respect to the class claims, is

**DENIED.**

**DONE and ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida,

this 26th day of September, 2007.

KENNETH A. MARRA
United States District Judge

Copies to:

All Counsel of Record

21