UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-60032-CIV-MARRA

C.C. and P.C. on behalf of A.C., a minor,
and on behalf of all other similarly situated
disabled children,

    Plaintiffs,
vs.

THE SCHOOL BOARD OF BROWARD
COUNTY, FLORIDA,

    Defendant.
_____/

## OPINION AND ORDER

This cause comes before the Court upon Plaintiff's Motion for Class Certification (DE 456) and Defendant, School Board of Broward County's, Motion for Summary Judgment (DE 459). The Motions are ripe for review. On May 8, 2014, this Court held a hearing. The Court has considered the parties' arguments and is otherwise advised in the premises. For the reasons stated below, Plaintiff's Motion for Class Certification (DE 456) is **DENIED WITHOUT PREJUDICE**, and Defendant's Motion for Summary Judgment is **GRANTED IN PART and DENIED IN PART**.

### I. Background[1]

Plaintiffs C.C. and P.C. are the mother and father of A.C., a minor. A.C. has been diagnosed with an autism spectrum disorder ("ASD"). Prior to his third birthday, A.C. received speech therapy,

---

[1] Unless otherwise noted, the background facts in this section are drawn from Defendant, School Board of Broward County's, Statement of Undisputed Material Facts and supporting evidence (DE 462). Plaintiff did not file a statement admitting or denying Defendant's facts as required by the Local Rules in effect at the time the Motion for Summary Judgment was being briefed. *See* S.D. Fla. L. R. 56.1(b) (Dec. 2, 2012). The Court finds Defendant's Statement supported by the record. Thus, Defendant's facts are considered to be admitted. *See id*.
    Plaintiffs did file an opposition to the Motion for Summary Judgement as well as their own Statement of Uncontested Material Facts and supporting evidence (DE 468), which the Court has also considered in the analysis. In any event, the background facts are not in dispute.

occupational therapy, and applied behavioral analysis ("ABA") under Part C of the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* ("IDEA").[2] These services were not provided by the Defendant School Board of Broward County ("School Board").

On July 17, 2007, when A.C.'s education was about to come within the purview of the School Board, the School Board conducted a meeting for the purpose of developing an individualized education program ("IEP") for A.C. C.C. and Dr. David Lubin, A.C.'s private behavioral specialist, attended the meeting. Thereafter, the School Board prepared an IEP for A.C. The School Board wanted A.C. to attend the Baudhuin Oral Preschool, a school for autistic children. However, this school was far from C.C.'s home, and C.C. elected not to enroll A.C. in any of the School Board's schools in 2007.

C.C. requested ABA therapy for A.C. at the July 2007 IEP meeting, but the School Board officials "didn't really want to hear what [she] had to say during the IEP meeting." C.C. Dep., p. 43 (DE 462-2). A.C. continued to receive ten hours of ABA therapy per week, for which Plaintiffs paid. C.C. had two complaints regarding the 2007 IEP process: (1) that she was not allowed to meaningfully participate in the development of the plan, and (2) that the request for ABA therapy was denied. (DE 468). However, Plaintiffs did not initiate any due process administrative proceedings regarding the 2007 IEP.[3]

---

[2] "Under Part C of the IDEA, states must provide disabled children under three years of age with an individualized family service plan, or IFSP, setting forth specific early intervention services necessary for the toddler or infant and their family. 20 U.S.C. § 1435(a)(4). Under Part B of the IDEA, states must provide disabled children between the ages of three and twenty-one with the opportunity to receive a 'free appropriate public education' ('FAPE') by offering each student special education and related services under an individualized education program, or IEP. 20 U.S.C. § 1412(a)(1)(A), (a)(4)." *L.M.P. ex rel. E.P. v. Sch. Bd. of Broward Cnty., Fla.*, 516 F. Supp. 2d 1305, 1311 (S.D. Fla. 2007).

[3] At approximately the same time, Plaintiffs requested an independent educational evaluation ("IEE") of A.C. The School Board denied that request, and an administrative proceeding took place. The issue before the Administrative Law Judge ("ALJ") was "[w]hether the Broward County School Board conducted an adequate and appropriate evaluation

Subsequently, the School Board held a meeting to create an IEP for A.C. for the 2008-2009 academic year. C.C. and her attorney attended the meeting on behalf of A.C. As a result of that meeting, an IEP was developed in August of 2008. The School Board again recommended that A.C. attend the Baudhuin Oral Preschool. However, after C.C. complained that it was far, A.C. was enrolled in Park Springs Elementary. Park Springs Elementary was a school serving both special and general education students with an appropriate type of classroom for A.C., which was closest to C.C.'s home. C.C. had the same two complaints with respect to the 2008 IEP process, but again initiated no administrative proceedings. During the 2008-2009 school year, A.C. continued to receive ten hours per week of ABA therapy paid for by Plaintiffs.

On April 28, 2008, A.C. filed a Complaint in Intervention in a related case brought by L.M.P. on behalf of E.P., D.P., and K.P. (the "Triplets")against the School Board, 05-60845-KAM. L.M.P. had exhausted administrative remedies with respect to the denial of ABA therapy and predetermination of placement before initiating her case in 2005. *See* Final Order (DE 239-1 in 05-60845).[4] L.M.P. originally proceeded individually (DE 1 in 05-60485), but on October 17, 2006 filed a Second Amended Class Action Complaint (DE 126 in 05-60845). On August 6, 2009, L.M.P. and Plaintiffs C.C. and P.C. filed Motions to Amend the pleadings. (DE 245, 246 in 05-60845). On January 4, 2010, this Court held a hearing on these Motions. The parties indicated that they had decided that L.M.P. was no longer going to pursue class claims, and that C.C, and P.C. would step in as putative class representatives and pursue class claim. This created an unusual procedural

---

of A.C. and properly refused his parents' request for an independent educational evaluation." (DE 196-1). The ALJ held that A.C. was entitled to an IEE at public expense. *Id.*

[4]A district court may take judicial notice of its own record in another case. *See Aloe Creme Labs., Inc. v. Francine Co.*, 425 F.2d 1295, 1296 (5th Cir. 1970). Also, Plaintiffs heavily rely on the record of L.M.P.'s action.

3

posture. The Court suggested that the cases should be bifurcated, and the parties acquiesced.

On January 8, 2010, L.M.P.'s and C.C. and P.C.'s cases were bifurcated. (DE 283 in 05-60845). L.M.P. was permitted to file a Third Amended Complaint as to individual claims only. (DE 320 in 05-60845).[5] Plaintiffs C.C. and P.C., however, filed an Amended Complaint asserting both individual and class claims. C.C. and P.C.'s Amended Complaint stated that they sought to represent the class "composed of all Broward County Public School students with ASD who requested one to one ABA be considered as an educational intervention under the IDEA, and, ASD children who were automatically denied the right to attend a public school, and who were assigned to insular private, segregated, school solely for ASD children, despite the fact that such children could have, and should have, received a free appropriate public education in a less restrictive public school." Am. Compl., ¶ 68 (DE 286-1).

On January 18, 2013, Plaintiffs C.C. and P.C. filed their Motion for Class Certification. This time Plaintiffs are seeking certification of a class defined as "all children who have been diagnosed with ASD and were enrolled at any level in the Broward County School District at any time between January 22, 2004 and the date the Court grants the certification Order." (DE 456). The Motion for Class Certification states that L.M.P.'s children are excluded from the class. Also on January 18, 2013, the School Board moved for summary judgment on C.C. and P.C.'s claims. These Motions for Class Certification and for Summary Judgment are before the Court now.

C.C. and P.C.'s operative Amended Complaint alleges: violation of A.C.'s right to a free and

---

[5]By a contemporaneous order, this Court is granting in part and denying in part the School Board's Motion for Summary Judgement in the L.M.P. action, dismissing L.M.P.'s section 1983 claim, and finding that a bench trial is necessary to resolve L.M.P.'s claims brought under the IDEA and section 1003.57 of the Florida Statutes, and that a jury trial is necessary to resolve the Rehabilitation Act claim.

appropriate public education ("FAPE") under the IDEA (count I); violation of A.C's rights under the Rehabilitation Act, 29 U.S.C. § 794 (count II); attorney's fees under the IDEA, 20 U.S.C. §1415 (count III); violation of A.C.'s rights under Fla. Stat. § 1003.57 (count IV); and violation of 42 U.S.C. § 1983 based on the School Board's failure to provide A.C. with a FAPE under the IDEA (count V)[6]. (DE 286-1). Additionally, the Amended Complaint asserts two class claims: denial of benefits in violation of the Rehabilitation Act (class claim I); and denial of benefits in violation of the IDEA (class claim II). *Id.* In each of the claims Plaintiffs ask for declaratory and injunctive relief, as well as for an award of costs of continued services wrongfully denied, compensatory education, compensatory damages, attorney's fees, costs, pre- and post-judgment interest. *Id.* Plaintiffs' position is that children with ASD are never allowed to receive ABA therapy, and that parents are not allowed meaningful participation in the IEP process.

In the opposition to the Motion to Certify Class the School Board argues that the proposed class definition is too broad, the Plaintiffs lack standing because they have not exhausted the administrative remedies, that the School Board has no policy of predetermination of placement or unavailability of options for children with ASD, and that Plaintiffs do not satisfy the numerosity, commonality, and typicality requirements. In the Motion for Summary Judgment, the School Board argues that Plaintiffs' claims fail as a matter of law because Plaintiffs have not exhausted their administrative remedies. Likewise, the School Board asserts that Plaintiffs were allowed to participate in the IEP process, and that the School Board has no policy of disallowing ABA therapy.

---

[6]This count is also numbered as "Count IV," but it is actually the fifth claim.

## II. Motion for Summary Judgment

**A. Legal standard**

There is a dispute as to whether this Court should apply Rule 56 or Rule 52 standard in ruling on Defendant's Motion for Summary Judgment.  The Court finds that Counts II and V are subject to Rule 56, and Counts I, III, and IV are subject to Rule 52.

**1. Rule 56 standard**

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The Court should not grant summary judgment unless it is clear that a trial is unnecessary, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party,  *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323.  To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case.  *Id.* at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electronic Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must

support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) and (B).

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. *Anderson*, 477 U.S. at 257. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." *Anderson*, 477 U.S. 242, 249–50 (internal citations omitted).

Generally, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Because there is no right to a jury trial under the IDEA, Rule 56 standards do not apply in IDEA cases, and district judges may engage in factfinding with respect to IDEA claims. *Loren F. ex rel. Fisher v. Atlanta Indep. Sch. Sys.*, 349 F.3d 1309, 1313 (11th Cir. 2003).

However, there may be a right to a jury trial under section 504 of the Rehabilitation Act, 29 U.S.C. §794(a), when plaintiff seeks legal remedies. *See Waldrop v. Southern Co. Serv., Inc.*, 24 F.3d 152, 155-57 (11th Cir. 1994) (alleged discrimination by an employer); *Whitehead by & through Whitehead v. Sch. Bd. for Hillsborough Cnty., Fla.*, 918 F. Supp. 1515, 1523 (M.D. Fla. 1996) (alleged discrimination by a school board). Here, Plaintiffs seek legal remedies.

Plaintiffs argue that they are excused from the requirement to exhaust administrative

remedies, and that in the absence of the administrative record, Rule 56 should apply to all claims in this case. Plaintiffs came into L.M.P.'s case as intervenors. Therefore, they are only able to proceed without having exhausted their administrative remedies due to the fact that L.M.P. has done so. *See* section (II)(B)(2)(a) *infra*. Therefore, this Court will attribute L.M.P.'s administrative record on the issues of predetermination. In fact, Plaintiffs' counsel in this case cites to the transcript of the administrative hearing held in the L.M.P. case. Therefore, an administrative record will be available, and the Court will apply the Rule 52 standard to the claims brought pursuant to the IDEA and section 1003.57 of the Florida Statutes, and will apply the Rule 56 standard to the claims brought pursuant to the Rehabilitation Act and section 1983 of Title 42.

**2. Rule 52 standard**

The IDEA authorizes an "aggrieved" party to bring an action in federal court challenging the findings and decision of the ALJ, with the burden of proof falling on the party challenging the agency decision. 20 U.S.C. § 1415(i)(2)(A); *Barnett v. Fairfax Cnty. Sch. Bd.*, 927 F.2d 146, 152 (4th Cir.1991). Once such a suit is filed, the district court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C.A. § 1415 (West). Accordingly, the district court's decision must be based on a preponderance of the evidence, giving "due weight" to the results of the administrative findings. *Loren F. ex rel. Fisher v. Atlanta Indep. Sch. Sys.*, 349 F.3d 1309, 1314 (11th Cir. 2003); *M.M. v. Sch. Bd. of Miami–Dade Cnty.*, 437 F.3d 1085, 1097 (11th Cir. 2006) (citing *Bd. of Educ v. Rowley*, 458 U.S. 176, 206-08 (1982)). It may be necessary for the district court to conduct a bench trial to receive evidence and make the factual findings. *Loren*, 349 F.3d

at 1319.

**B. Substantive arguments**

    **1. Section 1983 claim**

Plaintiffs allege a violation of section 1983 because A.C. was denied his rights under the IDEA. After this case was filed, the Eleventh Circuit Court of Appeals has held that "section 1983 actions for denial of rights conferred by the IDEA are barred because the IDEA's comprehensive enforcement scheme provides the sole remedy for statutory violations." *K.A. ex rel. F.A. v. Fulton Cnty. Sch. Dist.*, 741 F.3d 1195, 1210 (11th Cir. 2013).

Plaintiffs agree that this Court is bound by the Eleventh Circuit's holding in *K.A.*, and that Count IV of the Third Amended Complaint must be dismissed.

    **2. IDEA and section 1003.57 claims**

        **a. Exhaustion**

As this Court has previously explained:

> Under Part B of the IDEA, states must provide disabled children between the ages of three and twenty-one with the opportunity to receive a "free appropriate public education " ("FAPE") by offering each student special education and related services under an individualized education program, or IEP. 20 U.S.C. § 1412(a)(1)(A), (a)(4). . . . To ensure that disabled children with disabilities are guaranteed procedural safeguards with respect to the provision of FAPE under Part B, the IDEA requires states to provide, among other things, "an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6). When a complaint under section 1415(b)(6) is received by the state, the parents of the disabled child have an opportunity for an important due process hearing conducted by the state agency. 20 U.S.C. §1415(f). Following a decision by the state agency, the parents have the right to bring a civil action with respect to the complaint in either state or federal court. 20 U.S.C. § 1415(i)(2); Florida Statute § 1003.57.

*L.M.P. ex rel. E.P. v. Sch. Bd. of Broward Cnty., Fla.*, 516 F. Supp.2d 1294, 1300-01 (S.D. Fla.

2007).

Moreover, "Florida has incorporated the federal [IDEA] guidelines into section 1003.57, Florida Statutes."[7] *M.H. v. Nassau Cnty. Sch. Bd.*, 918 So. 2d 316, 318 (Fla. 1st DCA 2005). Thus, "[i]n Florida, the appropriate administrative procedure is to request a due process hearing before a state ALJ in the Florida [Division of Administrative Hearings]." *Sch. Bd. of Manatee Cnty., Fla. v. L.H. ex rel. D.H.*, 666 F. Supp. 2d 1285, 1291 (M.D. Fla. 2009).

Likewise, "whether claims asserting the rights of disabled children are brought pursuant to the IDEA, the ADA, Section 504, or the Constitution, they must first be exhausted in state administrative proceedings." *M.T.V. v. DeKalb Cnty. Sch. Dist.*, 446 F.3d 1153, 1158 (11th Cir. 2006). Thus, exhaustion is a prerequisite to the civil action for denial of appropriate public education to a disabled child, and a failure to exhaust administrative remedies by requesting and participating in a due-process hearing should result in dismissal of the civil action. *See Sch. Bd. of Lee Cnty., Fla. v. M.M. ex rel. M.M.*, 348 F. App'x 504, 511 (11th Cir. 2009) (citing *N.B. v. Alachua Cnty. Sch. Bd.*, 84 F.3d 1376, 1378 (11th Cir.1996)). However, if exhaustion would be futile or

---

[7]Section 1003.57 states in pertinent part:
A student may not be given special instruction or services as an exceptional student until after he or she has been properly evaluated and found eligible as an exceptional student in the manner prescribed by rules of the State Board of Education. The parent of an exceptional student evaluated and found eligible or ineligible shall be notified of each such evaluation and determination. Such notice shall contain a statement informing the parent that he or she is entitled to a due process hearing on the identification, evaluation, and eligibility determination, or lack thereof. Such hearings are exempt from ss. 120.569, 120.57, and 286. 011, except to the extent that the State Board of Education adopts rules establishing other procedures. Any records created as a result of such hearings are confidential and exempt from s. 119.07(1). The hearing must be conducted by an administrative law judge from the Division of Administrative Hearings pursuant to a contract between the Department of Education and the Division of Administrative Hearings. The decision of the administrative law judge is final, except that any party aggrieved by the finding and decision rendered by the administrative law judge has the right to bring a civil action in the state circuit court. In such an action, the court shall receive the records of the administrative hearing and shall hear additional evidence at the request of either party.

Fla. Stat. Ann. § 1003.57(1)(c).

inadequate, a plaintiff may be excused from this requirement. *M.T.V.*, 446 F.3d at 1159.

Here, this Court has ruled in its Order denying the School Board's motion to dismiss L.M.P.'s action that because L.M.P. alleged that the School Board had a policy of never making ABA therapy available to children with ASD, it would be futile to require all class members to exhaust administrative remedies. 516 F.Supp. 2d at 1305. Then, when C.C. and P.C. requested leave to intervene in L.M.P.'s action, the Court again said that they were excused from the exhaustion requirement on the basis of the previous ruling. (DE 190 in 05-60845). Now, the School Board argues that the standard of review at the summary judgement stage is different, and that under this more exacting standard Plaintiffs cannot establish that the School Board has a policy of denying ASD students ABA therapy because it is available as a methodology. Further, according to the School Board, Plaintiffs' failure to exhaust is fatal to their claims. In response, Plaintiffs primarily rely on this Court's previous rulings in L.M.P.'s case. According to Plaintiffs, the law of the case doctrine now requires the Court to rule in Plaintiffs' favor.

The Court disagrees that law of the case doctrine applies because it requires a decision of an appellate court. *See Thomas v. United States*, 572 F.3d 1300, 1303 (11th Cir. 2009) ("Under the law of the case doctrine, both district courts and appellate courts are generally bound by a prior appellate decision in the same case"). However, the Court finds that Plaintiffs should be excused from the requirement to exhaust their administrative remedies.

First, there is no dispute that C.C. and P.C. have not engaged in the administrative process. Therefore, the fact that the Court now applies the summary judgment and judgment on the record standard, as opposed to the motion to dismiss standard, is not relevant. Also, logic dictates that the Court must first address exhaustion, and only then can proceed to the merits of the claims.

Therefore, the Court cannot accept School Board's position that Plaintiffs cannot succeed on the merits, and, thus, cannot be excused from the exhaustion requirement. Lastly, C.C. and P.C. were already twice excused from the exhaustion requirement due to futility of asking the agency to review an alleged policy of predetermination numerous times.

### b. Substantive arguments

Plaintiffs' position is that children with ASD are never allowed to receive ABA therapy, and that parents are not allowed meaningful participation in the IEP process because the parents' requests for ABA therapy are never considered.[8] The School Board asserts that ABA is a methodology, and, therefore, it need not be included on the IEPs.

As a condition of receiving federal funds, the IDEA requires states to provide all children with disabilities between the ages of 3 and 21 residing in the state a "free appropriate public education" ("FAPE"). 20 U.S.C.A. § 1412(a)(1) (West). A FAPE includes "special education" and "related services" that "(A) have been provided at public expense, under public supervision and direction, and without charge; (B) meet the standards of the State educational agency; (C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and (D) are provided in conformity with the individualized education program required under section 1414(d)." 20 U.S.C.A. § 1401(9) (West); *see also* 34 C.F.R. § 300.17. "Special education" means "specially designed instruction, at no cost to parents, to meet the unique needs of a child with a disability, including– (A) instruction conducted in the classroom, in the home, in hospitals and institutions, and in other settings; and (B) instruction in physical education." 20 U.S.C.A. §

---

[8] In the Motion for Summary Judgement, the School Board also argues that Plaintiffs cannot show that the School Board has a policy of segregating autistic students in a separate preschool. However, Plaintiffs do not appear to be raising this argument. *See* Pl.'s Resp. (DE 467).

1401(29) (West).  The term "related services" includes:

> transportation, and such developmental, corrective, and other supportive services (including speech-language pathology and audiology services, interpreting services, psychological services, physical and occupational therapy, recreation, including therapeutic recreation, social work services, school nurse services designed to enable a child with a disability to receive a free appropriate public education as described in the individualized education program of the child, counseling services, including rehabilitation counseling, orientation and mobility services, and medical services, except that such medical services shall be for diagnostic and evaluation purposes only) as may be required to assist a child with a disability to benefit from special education, and includes the early identification and assessment of disabling conditions in children.

20 U.S.C.A. § 1401(26) (West).

States are also required to develop, review, and revise an individualized education program ("IEP") for each child.  20 U.S.C.A. § 1412(a)(4) (West).  An IEP is

> a written statement for each child with a disability that is developed, reviewed, and revised in accordance with this section and that includes –
> . . .
> a statement of the special education and *related services* and supplementary aids and services, based on peer-reviewed research to the extent practicable, to be provided to the child, or on behalf of the child, and a statement of the program modifications or supports for school personnel that will be provided for the child--
> (aa) to advance appropriately toward attaining the annual goals;
> (bb) to be involved in and make progress in the general education curriculum in accordance with subclause (I) and to participate in extracurricular and other nonacademic activities; and
> (cc) to be educated and participate with other children with disabilities and nondisabled children in the activities described in this subparagraph;

20 U.S.C.A. § 1414(d)(1)(A)(i) (West) (emphasis added).

Parents are active participants of the IEP process, and have a right to complain and seek redress. *K.A. ex rel. F.A. v. Fulton Cnty. Sch. Dist.*, 741 F.3d 1195, 1202 (11th Cir. 2013).  Further, impermissible "[p]redetermination occurs when the state makes educational decisions too early in the planning process, in a way that deprives the parents of a meaningful opportunity to fully

participate as equal members of the IEP team." *R.L. v. Miami-Dade Cnty. Sch. Bd.*, 757 F.3d 1173, 1188 (11th Cir. 2014).

Here, the ALJ did not reach the issue whether the Triplets' IEPs had been adequate and whether the School Board had offered them a FAPE. The ALJ also concluded that ABA therapy may qualify as a "related service," but that insufficient evidence had been introduced to make detailed factual findings about the exact nature of the ABA therapy. Final Order, ¶¶ 8, 26-28 (DE 239-1 in 05-60845). Therefore, a bench trial is necessary to resolve whether ABA therapy is a "related service" required to be included in a FAPE and listed on the IEP, or whether it is a methodology that should be left to the discretion of the classroom teacher. Moreover, during the administrative hearing, Carol Bianco, one of the School Board employees present at the Triplets' meeting to discuss their transition from Part C to Part B, advised the parents that ABA therapy was not provided by the School Board as a Part B intervention service. Tr. Admin. Hrg. (Bianco), p. 71.[9] Carol Bianco, who has worked for the School Board for approximately 30 years, later testified that to her knowledge the policy of the School Board was to never approve ABA therapy. *Id.*, p. 63-64. Thus, there is evidence of possible predetermination in this case. However, the issue ultimately hinges on the nature of the ABA therapy.

### 3. Rehabilitation Act claim

The parties make the same arguments regarding this claim as in the companion *L.M.P.* case. Therefore, for the reasons stated in the contemporaneously issued Order and Opinion in the *L.M.P.* action denying both sides' motions for summary judgment on this issue, this Court denies the School

---

[9]Citations to the transcript of the hearing held before the Administrative Law Judge ("ALJ") on January 24, 25, 27 and 28, 2005 will be made as "Tr. Admin. Hrg." followed by the name of the testifying witness and the page number.

Board's motion for summary judgment on C.C. and P.C.'s Rehabilitation Act claim.

### III. Motion for Class Certification

C.C. and P.C.'s Amended Complaint stated that they sought to represent the class "composed of all Broward County Public School students with ASD who requested one to one ABA be considered as an educational intervention under the IDEA, and, ASD children who were automatically denied the right to attend a public school, and who were assigned to insular private, segregated, school solely for ASD children, despite the fact that such children could have, and should have, received a free appropriate public education in a less restrictive public school." Am. Compl., ¶ 68 (DE 286-1). However, in the Motion for Class Certification under consideration now, Plaintiffs are seeking certification of a class defined as "all children who have been diagnosed with ASD and were enrolled at any level in the Broward County School District at any time between January 22, 2004 and the date the Court grants the certification Order." (DE 456). The School Board contends that Plaintiffs should not be allowed to change the class definition on the basis of a newly advanced theory that discovery has revealed that all ASD children had been affected.

"Before a district court may grant a motion for class certification, a plaintiff seeking to represent a proposed class must establish that the proposed class is 'adequately defined and clearly ascertainable.'" *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012) (quoting *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir.1970)). When the proposed class includes many members without claims, the court may deny certification. *See Walewski v. Zenimax Media, Inc.*, 502 F. App'x 857, 861 (11th Cir. 2012).

Here, the class definition that Plaintiffs propose in the Motion for Class Certification is overly broad. However, Plaintiffs will be allowed to propose another one.

For example, because the proposed class includes all Broward County students diagnosed with ASD, it will include many class members who had absolutely no interest in the ABA therapy. The only determination this Court is making at this time is that the class definition proposed in the Motion for Class Certification is overly broad. The Court leaves it to Plaintiffs to find a way of narrowing it. Thus, the Court will not address any other arguments at this time. The School Board's Motion to strike non-rebuttal argument or, in the alternative, for leave to file sur-reply (DE 477) is moot.

### IV. Conclusion

Accordingly, Plaintiff's Motion for Class Certification (DE 456) is **DENIED WITHOUT PREJUDICE**. Defendant, School Board of Broward County's, Motion for Summary Judgment (DE 459) is **GRANTED IN PART and DENIED IN PART**. Plaintiffs' 42 U.S.C. § 1982 claim is **DISMISSED**. The Motion for Summary Judgment is **DENIED** in all other respects. Defendant, School Board of Broward County's Motion to Strike Non-Rebuttal Argument or, in the Alternative, for Leave to File Sur-Reply to Plaintiff's Motion for Class Certification (DE 477) is **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 23rd day of September, 2014.

_____
KENNETH A. MARRA
United States District Judge